# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 08-CV-3669 (JFB) (AKT)

ALICIA R. DAY,

Plaintiff,

VERSUS

DISTINCTIVE PERSONNEL, INC.,

Defendant.

**MEMORANDUM AND ORDER**
September 1, 2009

JOSEPH F. BIANCO, District Judge:

Alicia R. Day, plaintiff *pro se*, brought the instant case, alleging employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Specifically, plaintiff alleges that defendant discriminated against her based on her race when they terminated her employment. Defendant moves to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As discussed below, the Court finds that plaintiff's complaint is barred by the doctrine of *res judicata*. Accordingly, the Court grants defendant's motion to dismiss, and dismisses the complaint, with prejudice.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint ("Compl."),[1] which the Court assumes to be true for the purposes of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party. In addition, the Court takes judicial notice of plaintiff's filings with, and determinations of the Equal Employment Opportunity Commission ("EEOC"), the New York State Division of Human Rights ("NYDHR"), and other related court filings, which were attached as exhibits to the

---

[1] The factual allegations in the complaint were asserted within a three-page typed document attached to an employment discrimination form complaint made available to the *pro se* plaintiff by the Clerk's office. Because the typewritten attachment does not include numbered paragraphs, citations to the complaint are by page number in the typewritten document.

defendant's moving papers.[2]

Plaintiff, an African-American, was employed at defendant Distinctive Personnel, Inc. as of October 1, 2007. (Compl. p. 1.) At approximately 9:18 a.m. on November 9, 2007, plaintiff was at work and received a call from her son's school, informing her that her son was sick and needed to be picked up. (*Id.*) She reported her need to leave work to her supervisor, Teresa Blaylock, who informed her that plaintiff needed to pass that message along to Linette Guelen, the Project Manager. (*Id.*) Plaintiff attempted to reach Guelen by telephone, but Guelen was in a meeting, and so she left a message with a secretary indicating that she had to leave work. (*Id.*) Blaylock then informed plaintiff that a replacement had been found for her for the day. (*Id.*) Plaintiff then unsuccessfully attempted to reach Guelen again, and left a message indicating that a replacement had been found for her, and that she was leaving work to go pick up her son. (*Id.*) Blaylock then informed plaintiff that the replacement was two or three minutes away, so she was free to leave. (*Id.*) Plaintiff left the office, and claims that she did not speak to Guelen, or anyone else employed by defendant for the remainder of that day. (*Id.*)

At approximately 8:00 p.m. on November 12, 2007, plaintiff called Guelen to inform her that she would not be reporting to work the next day, because her son was still sick. (*Id.*) Guelen responded harshly, and informed plaintiff that her request was unacceptable because of the timing of her call. (*Id.*) Plaintiff told Guelen that she was instructed at new hire orientation that employees were only required to report absences before 7:45 a.m. of the day that they would be out, and so she believed that her request was timely. (*Id.*) Plaintiff accused Guelen of using an unprofessional tone, and asked for Guelen's supervisor's name. (*Id.*) Plaintiff threatened to talk to Guelen's supervisor, Jean-Paul Renard, and informed Guelen that if plaintiff lost her job because of requesting the absence, she would sue defendant for discrimination. (Compl. p. 2.) Guelen then hung up the telephone on plaintiff. (*Id.*)

On November 14, 2007, plaintiff reported to work, expecting to have a meeting with both Guelen and Renard. (*Id.*) Plaintiff was surprised that Renard was not present at the meeting; rather, the meeting was attended by Guelen and Kenia Fowler, the Director of

---

[2] It is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint. *See, e.g., Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). In deciding motions to dismiss employment discrimination actions under Title VII, courts regularly take notice of EEOC and NYDHR filings and determinations relating to plaintiff's claims. *See, e.g., Lindner v. Int'l Bus. Mach. Corp.*, No. 06-CV-4751 (RJS), 2008 WL 2461934, at *1 n.1 (S.D.N.Y. June 18, 2008) (taking judicial notice of EEOC and NYDHR filings); *Muhammad v. N.Y. City Transit Auth.*, 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006) ("[P]laintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice."); *Evans v. N.Y. Botanical Garden*, No. 02-CV-3591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (taking judicial notice of documents issued by the NYDHR). In addition, the Court may take judicial notice of documents filed in related litigation by the plaintiff. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts"); *see, e.g., Nealy v. Berger*, No. 08-CV-1322 (JFB), 2009 WL 704804, at *1 (E.D.N.Y. Mar. 16, 2009) (taking judicial notice of court filings); *In re Enron Corp.*, 379 B.R. 425, 431 n.18 (S.D.N.Y. 2007) ("Judicial notice of public records such as court filings, is clearly appropriate.").

Recruitment. (*Id.*) Fowler asked plaintiff to explain her side of the story regarding her recent absences. (*Id.*) After plaintiff finished describing her description of the incidents, Fowler informed plaintiff that she believed Guelen's account. (*Id.*) Guelen then presented plaintiff with three separate "write-ups" for her signature, alleging specific workplace misconduct, at least one of which indicated that she had reported to work late. (*Id.*) Plaintiff reviewed the documents, and believing the accounts to be false, refused to sign them. (*Id.*) At that point, Guelen terminated plaintiff's employment. (*Id.*) Guelen requested that plaintiff sign a form that indicated that plaintiff was voluntarily resigning, but plaintiff refused to sign. (*Id.*) Renard has signed a sworn statement indicating that he was present at this meeting, which plaintiff claims to be fabricated. (Compl. p. 3.)

Plaintiff acknowledges that defendant claims to have a workforce comprised of 90 to 95 percent African Americans, but claims that statistic was not true prior to October 1, 2007, before defendant took over the contract that encompassed her employment. (Compl. p. 2.)

On December 6, 2007, plaintiff filed a complaint with the NYDHR, alleging that defendant discriminated against her based on her race. (Def.'s Ex. B.) In parallel, plaintiff filed a complaint regarding the same charge of discrimination with the EEOC on December 26, 2007. (Def.'s Ex. C.) Defendant served an answer to plaintiff's complaint with the NYDHR on January 24, 2008 (Def.'s Ex. D), and on May 7, 2008, the NYDHR issued a "Determination and Order After Investigation" which dismissed her complaint, concluding that there was "no probable cause to believe that [defendant] has engaged in or is engaging in the unlawful discriminatory practice complained of," noting that the investigation "failed to uncover sufficient evidence to establish a casual nexus between [plaintiff's] race/color and the allegations as stated in her complaint." (Def.'s Ex. E.) The Order warned plaintiff that the EEOC was likely to adopt the NYDHR's findings, unless plaintiff filed a request with the EEOC to review the findings within fifteen days. (*Id.*) On July 11, 2008, the EEOC adopted the findings of the NYDHR, and notified plaintiff of her right to sue in federal or state court. (Def.'s Ex. F.)

On July 3, 2008, plaintiff filed a civil action in New York State Supreme Court under index number 12258/08, which included a three-page typewritten attachment in which the plaintiff described her factual allegations of race discrimination (hereinafter, "NY Action"). (Def.'s Ex. L.) On August 26, 2008, defendant moved to dismiss the NY Action. (Def.'s Ex. M.) On September 10, 2008, plaintiff filed the instant action, which attached the *identical* typewritten description of her allegations that were attached to the NY Action. (Compl.) By Order dated January 30, 2009, defendant's motion to dismiss was granted in the NY Action, with the court specifically finding that defendant had demonstrated entitlement to a defense founded upon documentary evidence pursuant to N.Y. C.P.L.R. § 3211(a)(1), and that plaintiff had failed to state a cause of action pursuant to N.Y. C.P.L.R. § 3211(a)(7).[3]

B. Procedural History

Defendant moved to dismiss the complaint on December 12, 2008, alleging that the complaint should be dismissed for failing to state a cause of action upon which relief can be granted under Rule 12(b)(6) of the Federal

---

[3] Defendant's submitted a copy of the decision, dismissing the NY Action, as an attachment to a letter to the Court dated February 6, 2009.

3

Rules of Civil Procedure, and alternatively, that it should be dismissed because of the then-pending NY Action under the *Colorado River* abstention doctrine. According to the briefing schedule established by the Court, plaintiff's opposition papers were due by January 23, 2009. By letter dated January 26, 2009, plaintiff requested a 45-day extension of her deadline to file an opposition, which was granted *nunc pro tunc*, adjourning the deadline to file opposition papers until March 16, 2009. By letter dated February 6, 2009, defendant notified the Court that the NY Action was dismissed, and requested that the complaint be dismissed on the grounds that there was a final decision in that action regarding plaintiff's race discrimination claims. By letter dated March 15, 2009, plaintiff requested an additional 60-day extension, which was granted by the Court, adjourning her deadline to file opposition papers until May 18, 2009. Plaintiff did not file an opposition or another request for an extension of time. On July 17, 2009, the Court issued an order, allowing *pro se* plaintiff one final extension until August 17, 2009 to file opposition papers, and explicitly indicated that failure to submit papers by that deadline would result in the Court considering the motion unopposed, based upon defendant's papers alone. Plaintiff filed opposition papers on August 18, 2009, and reply papers were filed by the defendant on August 25, 2009. This matter is fully submitted, and all submissions have been considered by the Court.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to

count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally. . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings. . . . This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." 537 F.3d 185, 191 (2d Cir. 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se,* the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alterations in original)); *accord Sharpe v. Conole*, 386 F.3d 483, 484 (2d Cir. 2004).

### III. DISCUSSION

For the reasons stated below, the Court finds plaintiff's complaint barred on *res judicata* grounds, based on the termination of the action filed by plaintiff in New York state court.[4] The Court dismisses the action, with prejudice, without allowing *pro se* plaintiff the opportunity to file an amended complaint, as any attempt to amend the pleadings in this case would be futile.

### A. *Res Judicata*

Under the doctrine of *res judicata*, otherwise known as claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir. 1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)) (internal quotation marks omitted) (emphasis omitted); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine applies only if "(1) there is a previous adjudication on the merits; (2) the previous action involved [defendant] or its privy; and (3) the claims involved were or could have been raised in the previous action." *Whelton v. Educ. Credit Mgmt. Corp.*, 432 F.3d 150, 155 (2d Cir. 2005) (citing *Monahan v. N.Y. City Dep't of Corr.*,

---

[4] As discussed *supra*, when defendant initially moved to dismiss the complaint in this action, it was unable to move to dismiss on *res judicata* grounds because the NY Action was still pending. Instead, the defendant requested that the instant action be dismissed because of the pending NY Action based on the *Colorado River* abstention doctrine, established by the United States Supreme Court in *Colorado Water Conservation District v. United States*, 424 U.S. 800 (1976), and its progeny. By letter dated February 6, 2009, the defendant requested that the complaint should also be dismissed because of the final disposition of the NY Action, which was just recently dismissed at the time, which the Court interprets as asserting a defense of *res judicata*. In any event, the Court notes that whether or not the defense of *res judicata* was properly raised by defendant, the Court has the authority to exercise the *res judicata* doctrine *sua sponte*, in the interest of judicial economy. *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (holding that "the strong public interest in economizing the use of judicial resources by avoiding relitigation" justifies a court's *sua sponte* raising of *res judicata*, and that "[t]he failure of a defendant to raise *res judicata* in answer does not deprive a court of the power to dismiss a claim on that ground"); *Vasquez v. Gotti*, No. 09-CV-1680 (DLI), 2009 WL 2226578, at *2 (E.D.N.Y. July 23, 2009) (raising *res judicata* defense *sua sponte*; dismissing *pro se* complaint); *accord Loren v. Feerick*, No. 97-CV-3975 (KMW), 1997 WL 441939, at *1 (S.D.N.Y. Aug. 6, 1997), *aff'd,* 152 F.3d 919 (2d Cir. 1998).

214 F.3d 275, 284-85 (2d Cir. 2000)). "In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (citation and quotation marks omitted). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Id.* Therefore, as the Second Circuit has noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty*, 199 F.3d at 613. Furthermore, in evaluating the *res judicata* effect of a prior action, "courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related findings." *Kramer*, 937 F.2d at 774.

The Court finds that plaintiff's complaint in the instant action is barred by the doctrine of *res judicata*. As an initial matter, there can be no dispute that between the NY Action and the Federal Action, there is an identity of parties, given that both actions involve the same named defendant. Similarly, the claims brought in both actions involve a review of the NYDHR's determination that plaintiff did not have a viable cause of action for race discrimination – in fact, plaintiff submitted the identical, *verbatim* allegations in both actions. Finally, it is plain to the Court that the dismissal of the NY Action was a final determination on the merits, where it was the judgment of the New York State Supreme Court that the complaint be dismissed based upon a valid defense founded upon documentary evidence pursuant to N.Y. C.P.L.R. § 3211(a)(1), and a failure to state a cause of action pursuant to N.Y. C.P.L.R. § 3211(a)(7). *Berrios v. N.Y. City Housing Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) ("As the sufficiency of a complaint to state a claim on which relief may be granted is a question of law, the dismissal for failure to state a claim is a final judgment on the merits and thus has *res judicata* effects") (internal citation and quotation marks omitted); *see also Feigen v. Advance Capital Mgmt. Corp.*, 146 A.D.2d 566 (N.Y. App. Div. 1989) (holding that a dismissal pursuant to N.Y. C.P.L.R. § 3211(a)(1) and § 3211(a)(7) is a dismissal on the merits for *res judicata* purposes). Plaintiff appealed the NYDHR's finding of no probable cause of race discrimination to state court, and it is well-settled that the subsequent dismissal of that case on the merits has *res judicata* effect on the instant Title VII action regarding the same alleged incidents of discrimination. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982) (holding that NYDHR finding of no probable cause that was upheld on administrative appeal to NYDHR's appeal board as well as on judicial appeal to the New York Appellate Division precluded Title VII claim filed in federal court); *Dewitt v. One Beacon Ins. Co.*, No. 07-CV-1938, 2009 WL 722689, at *1 (2d Cir. Mar. 16, 2009) (affirming dismissal of Title VII action on *res judicata* grounds where plaintiff presented same claims to federal court that were previously presented to the NYDHR and were reviewed and affirmed by New York state court) (citing *Kremer*, 456 U.S. at 481-84); *Walsh v. City of Auburn*, 942 F. Supp. 788, 796 (N.D.N.Y. 1996) ("Because the elements of proving discrimination are virtually identical under federal and state anti-discrimination laws, [NYDHR] decisions that have been affirmed by a state court preclude litigation of the same claims under the analogous federal statute.").

The judgment of the New York State

Supreme Court is accordingly entitled to preclusive effect under the *res judicata* doctrine.[5] If plaintiff believes that the judgment of that court was erroneous, the appropriate manner for plaintiff to challenge the decision is now through direct appeal to the New York Appellate Division and not a collateral attack in federal court. *See Fidelo v. Mobil Oil Corp.,* No. 89-CV-6419 (CSH), 1990 WL 165758, at *3 (S.D.N.Y. Oct. 19, 1990).[6]

B. Leave to Replead

The Court has also considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "a court should freely give [leave to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. As discussed in detail *supra*, it is plain from the complaint that plaintiff does not have any possibility of asserting plausible Title VII claims that overcome the *res judicata* defect.

In sum, the Court finds that no further amendments can cure this deficiency and any attempt to replead this frivolous complaint would be futile. *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully

---

[5] The Court notes that plaintiff's opposition papers solely contend that the instant motion should be denied because Renard and members of Renard's staff have submitted false statements, and did not address defendant's argument that the instant action must be dismissed because of the dismissal of the NY Action on the merits.

[6] The Court also agrees with defendant's argument that the plaintiff has failed to set forth the minimal requirements under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, even liberally construed, plaintiff's complaint fails to allege *any* facts relating to race, other than a conclusory statement that defendant's workforce was not comprised of 90 to 95 percent African Americans prior to October 1, 2007. *See, e.g., Yusuf v. Vassar College*, 35 F.3d 709, 713-14 (2d Cir. 1994) (dismissing claims based on plaintiff's conclusory assertions of race and gender discrimination); *see also Ercole v. U.S. Dep't of Transp.,* No. 07-CV-2049 (JFB), 2008 WL 4190799, at *6-7 (E.D.N.Y. Sept. 10, 2008) (finding *pro se* complaint did not meet Rule 12(b)(6) pleading standards where complaint had no factual allegations to support vague and conclusory assertion that plaintiff was subject to unlawful discrimination); *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 717-18 (D. Conn. 2003) (dismissing complaint based in part on the fact that no factual allegations were provided in support of discrimination claim). However, the Court does not rely on the insufficiency of plaintiff's pleadings in determining that the complaint should be dismissed; if the Court's decision was based on this argument alone, it would have granted leave for the *pro se* plaintiff to submit an amended complaint to address this defect. *See, e.g., Ercole*, 2008 WL 4190799, at *7 (finding *pro se* plaintiff's Title VII amended complaint defective under Rule 12(b)(6), but granting leave for plaintiff to file amended complaint).

denied"). Accordingly, plaintiff's complaint is dismissed with prejudice.

### IV. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is GRANTED. Accordingly, the complaint is dismissed, with prejudice. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 1, 2009
Central Islip, New York

\* \* \*

Plaintiff appears *pro se*. The attorney for defendant is Richard C. Agins, Esq., of Agins, Siegel & Reiner, LLP, 386 Park Avenue South, Suite 1200, New York, NY 10016.